FILED

14 JAN 28 AM 11: 53

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY ___20___   DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARICELA SANCHEZ-DELGADO,<br><br>                              Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>                              Respondent. | CASE NO. 13-CV-2143-BEN/12-CR-2665-BEN-1<br><br>**ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**<br><br>[Civil Docket No. 1/Criminal Docket No. 52] |

Before this Court is the Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. 2255 filed by Petitioner Maricela Sanchez-Delgado. (Docket No. 52).[1] For the reasons stated below, the Motion is **DENIED**.

## BACKGROUND

On April 29, 2012, Petitioner and her daughter attempted to enter the United States from Mexico. Customs and Border Patrol officers found 13 packages of methamphetamine, weighing 14.60 kilograms, in the gas tank of their vehicle. On June 28, 2012, Petitioner and her daughter were indicted with importation of methamphetamine. On September 11, 2012, Petitioner pled guilty to the indictment pursuant to a plea agreement, and exonerated her daughter. This Court sentenced Petitioner to 46 months of imprisonment on February 25, 2103.

---

[1]All docket numbers refer to the criminal docket, 12-CR-2665-BEN-1.

1    Petitioner filed the instant motion on September 11, 2013.  Petitioner's first
2  claim is "not enough support from my attorney."  (Mot. at 5).  She contends that her
3  attorney would not let her out on bail even though someone would sign for it, that
4  he told her family not to let her out on bail because she would run, and that he
5  would not let her out even after her father died.  She also claims that her attorney
6  was very rude to her friend.  She states that her attorney would "literally yell at me"
7  and pressured her to provide information to the government. (*Id.*)  She also said that
8  he "just wouldn't provide any professional or moral support regarding my case."
9  (*Id.*)  Petitioner's second claim is that her son is sick and needs proper care.  (*Id.* at
10  6).  She states that her son, who is now 23 years, was diagnosed with bipolar
11  disorder when he was 18 years old.  (*Id.*)  She asks this Court to grant electronic
12  home monitoring for the duration of her sentence, a sentence reduction, or to have a
13  portion of the sentence suspended.  (*Id.* at 14).

### LEGAL STANDARD

15    A district court may "vacate, set aside or correct" a sentence of a federal
16  prisoner that was imposed in violation of the Constitution or a law of the United
17  States.  28 U.S.C. § 2255(a).  A district court must hold an evidentiary hearing
18  before denying a § 2255 motion, unless it is conclusively shown that the prisoner is
19  entitled to no relief.  28 U.S.C. § 2255(b).  However, if it is clear the petitioner has
20  failed to state a claim, or has "no more than conclusory allegations, unsupported by
21  facts and refuted by the record," a district court may deny a § 2255 motion without
22  an evidentiary hearing. *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986).

### DISCUSSION

### I. Petitioner Waived Her Right to Collateral Attack

25    Review of the record in this matter indicates that Petitioner's claims are
26  barred by her waiver of her collateral attack rights.

27    As part of the plea agreement, Petitioner agreed to waive her right to
28  collaterally attack her sentence.  (Plea Ag. ¶ XI).  The Ninth Circuit has upheld the

1  validity of waivers of the right to collaterally attack a sentence pursuant to § 2255.

2  *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir.), *cert. denied*, 508 U.S. 979

3  (1993).  Waivers  in plea bargaining are "an important component of this country's

4  criminal justice system."  *United States v. Navarro-Botello*, 912 F.2d 318, 321 (9th

5  Cir. 1990) (citation omitted) (in the context of a waiver of right to appeal).  The

6  Ninth Circuit has held that public policy strongly supports plea agreements. *Id.*

7  Plea bargaining saves the state time and money, allowing it to promptly impose

8  punishment without expending resources. *Id.* at 322 (citing *Town of Newton v.*

9  *Rumery*, 480 U.S. 386, 393 n.3 (1987)).  Additionally, and "perhaps the most

10 important benefit of plea bargaining, is the finality that results." *Id.* at 322.

11         The right of collateral attack in a criminal case is purely statutory. *Abarca*,

12 985 F.2d at 1014.  A waiver of the right to collateral attack will be upheld where it

13 was "knowing and voluntary." *Id.*  A knowing and voluntary waiver is enforceable

14 where the language of the waiver encompasses the grounds raised. *See Patterson-*

15 *Romo v. United States*, No. 10-cr-3319, No. 12-cv-1343, 2012 WL 2060872, at *1

16 (S.D. Cal. June 7, 2012); *United States v. Rahman*, 642 F.3d 1257, 1259 (9th Cir.

17 2011) (citation omitted) (discussing the right to appeal).

18         1.  Knowing and Voluntary

19         The waiver of a statutory right to challenge a conviction or sentence is

20 knowing and voluntary if the plea agreement as a whole was knowing and

21 voluntary. *See United States v. Jeronimo*, 398 F.3d 1149, 1154 (9th Cir. 2005)

22 (discussing the right to appeal) (overruled on other grounds); *United States v.*

23 *Portillo-Cano*, 192 F.3d 1246,  1250 (9th Cir. 1999) ("waivers of appeal must stand

24 or fall with the agreement of which they are a part") (internal quotations and

25 citations omitted).  A waiver will be considered knowing and voluntary where the

26 plea colloquy satisfies Rule 11, and the record reveals no misrepresentation or gross

27 mischaracterization by counsel that tainted the plea. *See United States v.*

28 *Sepulveda-Iribe*, 197 Fed. Appx. 592, 592 (9th Cir. 2006) (citing *Jeronimo*, 398

1  F.3d at 1157 n.5) (discussing right to appeal).  After a careful review of the written

2  plea agreement, the Rule 11 plea colloquy, and the entire record in this matter, this

3  Court finds that the plea and the waiver were knowing and voluntary.

4               *a. Review of the Record*

5        The plea agreement conferred significant benefits on Petitioner.  Petitioner

6  acknowledged that importation of methamphetamine has a mandatory minimum

7  penalty of ten years in custody and has a maximum penalty of life in prison.  (Plea

8  Ag. ¶ V).  The parties agreed to reduce her base offense level based on a reduction

9  in role, application of the safety valve, a mitigating role, acceptance of

10  responsibility, and a departure for accepting a fast-track agreement.  (*Id.* ¶ X).  The

11  base offense level was thereby reduced from 38 to 26, and Petitioner received relief

12  from the mandatory minimum sentence.  The Government recommended, and this

13  Court agreed to impose, a sentence at the low end of the sentencing guidelines.  (*Id.*)

14        In the agreement, Petitioner agreed to a paragraph entitled "Defendant

15  Waives Appeal and Collateral Attack."  (*Id.* ¶ XI).  In relevant part:

16       In exchange for the Government's concessions in this plea agreement,

17  defendant waives, to the full extent of the law, any right to appeal or to
   collaterally attack the conviction.  Defendant also waives, to the full

18  extent of the law, any right to appeal or to collaterally attack the
   sentence, including any restitution order, unless the Court (1) denies

19  defendant's request for a minor role reduction . . . and (2) imposes a
   custodial sentence above the greater of the high end of the guideline

20  range applicable to Adjusted Offense Level 26 at defendant's Criminal
   History Category as determined by the Court at the time of sentencing,

21  or the statutory mandatory minimum term, if applicable.

22  (*Id.*)  This Court accepted the minor role reduction and imposed a sentence at the

23  low end of the guideline range.

24        By signing the plea agreement, Petitioner agreed to a section entitled

25  "Defendant's Representation That Guilty Plea is Knowing and Voluntary."  (*Id.*

26  ¶ VI).  Among other things, the section stated that: (A) she had full opportunity to

27  discuss all the facts and circumstances of the case with counsel and had a clear

28  understanding of the charges and consequences of the plea, (B) no one had made

any promises or offered any rewards for pleading guilty except for those in the

1  agreement or disclosed to the court, (C) that no one threatened Petitioner or her
2  family, and (D) that Petitioner was pleading guilty only because she was guilty.
3  (*Id.*) Petitioner also certified that she had read the agreement or had it read to her in
4  her native language, had discussed the terms with defense counsel, and "fully
5  understands its meaning and effect." (*Id.* ¶ XV). She asserted that she had
6  consulted with counsel and was satisfied with counsel's representation. (*Id.* ¶ XVI).
7  Petitioner signed the agreement, and initialed every page.

8      The Court also reviewed the transcript of Petitioner's Change of Plea Hearing
9  before Magistrate Judge William McCurine, Jr. (Change of Plea Hearing Tr.)
10 Petitioner appeared with the assistance of counsel and an interpreter. Petitioner
11 informed the judge that she was satisfied with the work done by her attorney. (*Id.* at
12 4:1-3). Petitioner was informed about the rights she was giving up by pleading
13 guilty, and stated that she understood. (*Id.* at 4:9-5:1). Petitioner stated that she
14 understood the elements of the offense, (*id.* at 5:2-12), and admitted to a factual
15 basis for her plea, (*id.* at 5:15-6:20). The Magistrate Judge stated the maximum
16 penalties, and Petitioner stated that she understood the possible immigration
17 consequences of her plea, as discussed in her plea agreement. (*Id.* at 7:1-20). The
18 Magistrate Judge explained the consequences of violating supervised release, and
19 the role of the sentencing guidelines. (*Id.* at 7:22-8:16). Petitioner stated that her
20 attorney had explained the guidelines to her, and that she understood them. (*Id.* at
21 8:4-16). The Magistrate Judge also highlighted the waiver portion of the plea
22 agreement, and Petitioner told the court that she understood the waiver. (*Id.* at 8:18-
23 9:5). Petitioner confirmed that the agreement had her signature and her initials, and
24 initialed pages 2 and 3 in the presence of the Magistrate Judge. (*Id.* at 9:12-10-8).
25 Her attorney stated to the court that he went over the agreement with Petitioner in a
26 language that she understood, that he was satisfied that she understood everything
27 in the agreement, and that the agreement was in her best interests. (*Id.* at 10:14-19;
28 11:2-7). Petitioner stated to the Magistrate Judge that no other promises had been

1 made to her, that she was not pleading guilty to help someone else, and that she was

2 pleading guilty because she was guilty. (*Id.* at 11:14-23). The Magistrate Judge

3 gave her another opportunity to speak privately with her attorney, and assured her

4 that it was okay to do so. (*Id.* at 11:24-12:3). Petitioner reaffirmed that she was

5 satisfied with the work done by her attorney, and stated that she believed the plea

6 agreement was in her own best interest. (*Id.* at 12:4-9). The Magistrate Judge

7 found that her plea was knowing and voluntary. (Docket No. 29).

8       Petitioner appeared before this Court for sentencing with the assistance of her

9 attorney and an interpreter. (Sentencing Hearing Tr.) Petitioner's counsel argued

10 for a lower sentence, and Petitioner addressed this Court. The Court specifically

11 noted the excellent job done by defense counsel, and the fact that he negotiated a

12 46-month sentence instead of a possible 135-month sentence. (*Id.* at 11:16-21).

13 Both Petitioner and her counsel acknowledged that she waived her right to appeal

14 and collateral attack. (*Id.* at 15:3-8).

15       Since the Rule 11 colloquy was proper, the waiver will be considered proper

16 if there is no misrepresentation or gross mischaracterization by counsel. *See*

17 *Sepulveda-Iribe,* 197 Fed. Appx. at 592.

18                *b. Petitioner's Allegation Regarding Counsel*

19       One of Petitioner's claims is a lack of support from her counsel. However,

20 none of Petitioner's claims in any way suggest that he made any misrepresentations

21 or mischaracterizations regarding the plea or the plea agreement. Petitioner's

22 claims relate to efforts to get out on bail, treatment of her friend, pressure to

23 collaborate with the Government, and a general lack of support. Although she

24 states that she was pressured to provide information to the Government, she never

25 indicates that she was pressured to accept the plea agreement. There is no

26 suggestion that she was not communicating with counsel or that she was not fully

27 informed. Her responses to the Magistrate Judge indicated that she was

28 communicating with counsel, was satisfied with his representation, and had a full

13cv2143/12cr2665

1  understanding of the agreement.  None of Petitioner's claims indicate that her plea
2  or plea agreement were not knowing and voluntary.

3      *c. Conclusion*

4      After full consideration of the briefing and the record in this matter, this
5  Court concludes that the waiver was knowing and voluntary.

6                    2. Scope of the Waiver

7      Petitioner's claims are waived if they come within the scope of the provision.
8  Plea agreements are contractual in nature and are measured by contractual
9  standards.  *United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir.), *cert. denied,* 531
10 U.S. 1057 (2000).  In interpreting a plea agreement, a court looks to what the parties
11 reasonably understood to be the terms of the agreement.  *See United States v.*
12 *Torres*, 999 F.2d 376, 378 (9th Cir. 1993) (citation omitted).

13     The language of the waiver provision in the plea agreement was broad, and
14 she waived her right to collaterally attack her conviction or sentence, to the full
15 extent of the law.  As such, it bars any challenge to her conviction based on her
16 attorney's lack of support and any challenge to the length of her sentence based on
17 her family situation.

18 **II. Petitioner Fails to State a Claim Based on Lack of Support From Counsel**

19     Even if the waiver were not enforceable, Petitioner's claim regarding her
20 counsel fails on the merits.  This Court interprets Petitioner's claim as alleging
21 ineffective assistance of counsel.

22     A petitioner asserting an ineffective assistance of counsel claim must
23 demonstrate that (1) defense counsel's performance was deficient; and (2) this
24 deficient performance prejudiced the petitioner's defense.  *Strickland v.*
25 *Washington*, 466 U.S. 668, 690-92 (1994).  To establish performance is deficient,
26 Petitioner must show that his counsel's representation "fell below an objective
27 standard of reasonableness."  *Id.* at 687-688.  Because of the difficulties inherent in
28 evaluating the performance of counsel after the fact, a court must indulge a strong

1   presumption that counsel's conduct falls within the wide range of reasonable
2   professional assistance. *Id.* at 689.  To demonstrate prejudice, a defendant must
3   show that there is a "reasonable probability" that "but for counsel's unprofessional
4   errors, the result of the proceeding would have been different." *Id.* at 694.  A
5   reasonable probability is a probability sufficient to undermine confidence in the
6   outcome.  *Id.*  Petitioner has not demonstrated that her counsel's performance was
7   deficient, or that she was prejudiced by any deficiency.

8         Petitioner first contends that her counsel would not let her out on bail.
9   However, if Petitioner had made bail, she would not have been able to leave
10  custody.  Petitioner is a non-citizen who had been charged with a crime related to
11  controlled substances.  As such, federal law required that she remain in custody.
12  *See* 8 U.S.C. § 1226(c)(1)(B); 8 U.S.C. § 1227(a)(2)(B).  It was not outside the
13  range of reasonable professional assistance for her attorney to fail to pursue bail
14  where Petitioner could not be released.  Additionally, she cannot show prejudice
15  where pursuing bail could not have changed the outcome.

16        Petitioner's second contention is that her attorney called one of her friends
17  and was rude to her.  Although perhaps unpleasant, being rude to Petitioner's friend
18  does not bring counsel's representation of Petitioner below an objective standard of
19  reasonableness.  Petitioner also does not argue that she was prejudiced in any way
20  by counsel's rudeness.

21        Finally, Petitioner raises claims about her relationship with her attorney.  She
22  claims that her counsel did not provide professional and moral support, and alleges
23  that her attorney yelled at her and pressured her to cooperate with the Government.
24  The Sixth Amendment does not guarantee a "meaningful relationship" between a
25  client and his attorney. *Morris v. Slappy*, 461 U.S. 1, 14 (1983).  "An irreconcilable
26  conflict in violation of the Sixth Amendment occurs only where there is a complete
27  breakdown in communication between the attorney and client, and the breakdown
28  prevents effective assistance of counsel." *Stenson v. Lambert*, 504 F.3d 873, 886

1   (9th Cir. 2007).  Here, Petitioner does not allege that counsel failed to explain

2   anything properly to her, or that their relationship was so toxic she was unable to

3   work with her attorney. She nowhere alleges that she was pressured into pleading

4   guilty, signing a plea agreement, or giving up any rights. She also does not contend

5   that he advised her to do anything contrary to her interest.  Far from falling below

6   an objective standard of reasonableness, strongly encouraging a client to cooperate

7   with the government is often in the best interest of the client, as it can lead to a

8   reduction in the client's sentence.  As such, although Petitioner might

9   understandably have wished for a supportive attorney, Petitioner has not shown that

10  counsel was constitutionally deficient.  Petitioner also has not alleged that she was

11  in any way prejudiced by counsel's actions.  Indeed, it is apparent to this Court that

12  defense counsel obtained a particularly advantageous deal for his client.

13  **III.  Petitioner Fails to State a Claim Based on Her Family Situation**

14          Even if Petitioner's waiver were invalid, Petitioner's claim that this Court

15  should impose a different sentence because of her son's situation would fail.

16          Petitioner's comments regarding her family situation do not suggest that there

17  is any legal reason why her sentence is improper.  A petitioner's request for a

18  reduction in sentence based on his or her family situation is not a ground for habeas

19  relief in a § 2255 motion. *Infante-Razo v. United States*, CV-F-05-1449, CR-F-05-

20  166, 2008 WL 2704987, at \*2 (E.D. Cal. July 10, 2008).  This Court heard

21  Petitioner's request that this Court consider her family situation at sentencing, and

22  considered it in imposing the sentence that this Court found to be appropriate. (Sent

23  Hearing Tr. at 5:1-2; 5:15-17; 7:25-8:13; 11:16; 12:13-14).  Petitioner fails to state a

24  claim on this basis.

25  **IV. Evidentiary Hearing**

26          Unless the motion and the records of a case conclusively show that the

27  prisoner is entitled to no relief, a court is required to grant a hearing. 28 U.S.C. §

28  2255(b).  However, where the record demonstrates that a petitioner has failed to

1   state a claim, a district court may deny a § 2255 motion without an evidentiary

2   hearing. *Quan*, 789 F.2d at 715. Given the foregoing discussion, this Court finds

3   that Petitioner cannot succeed upon her claims, and holding an evidentiary hearing

4   or seeking additional briefing would serve no purpose.

5   **V. Conclusion**

6         In accordance with the conclusions set forth above, Petitioner's Motion to

7   Vacate, Set Aside, or Correct Sentence is **DENIED**.

8         A court may issue a certificate of appealability where the petitioner has made

9   a "substantial showing of the denial of a constitutional right," and reasonable jurists

10  could debate whether the motion should have been resolved differently, or that the

11  issues presented deserve encouragement to proceed further. *See Miller-El v.*

12  *Cockrell*, 537 U.S. 322, 335 (2003). This Court finds that Petitioner has not made

13  the necessary showing. A certificate of appealability is therefore **DENIED**.

14        **IT IS SO ORDERED.**

15

16  Dated: _____, 2014

17                          HON. ROGER T. BENITEZ

                          United States District Judge

18

19

20

21

22

23

24

25

26

27

28

13cv2143/12cr2665